ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| ASOCIACIÓN DE RESIDENTES DE BOSQUES DE LA SIERRA, INC., Recurrente, v. RAD-MAN LAND 1, LLC, Recurrida. | TA2025RA00304 | REVISIÓN procedente del Departamento de Asuntos del Consumidor. Querella núm.: CAG-2025-0006846 Sobre: compraventa de vivienda a desarrollador (Ley Núm. 130 de 13 de junio de 1967, según enmendada). |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 11 de diciembre de 2025.

La parte recurrente, Asociación de Residentes de Bosques de la Sierra, Inc. (Asociación), instó el presente recurso el 23 de octubre de 2025. En él, solicitó la revocación de la *Resolución Sumaria* emitida el 18 de septiembre de 2025, notificada el 19 de septiembre de 2025, por el Departamento de Asuntos del Consumidor (DACo). Mediante esta, el DACo declaró con lugar la moción de desestimación presentada por la parte recurrida, Rad-Man Land 1, LLC (Rad-Man), y ordenó el cierre y archivo de la querella.

Por los fundamentos que expondremos a continuación, confirmamos la determinación recurrida.

I

El 21 de marzo de 2025, la Asociación presentó ante el DACo una querella (CAG-2025-006846) contra Rad-Man. Alegó que Rad-Man fungía como el urbanizador y desarrollador de la urbanización Bosques de la Sierra, ubicada en Caguas, Puerto Rico, y que vendió propiedades bajo la premisa de que la urbanización contaría con un sistema de control de acceso. Además, sostuvo que el control de acceso no había sido legalizado

y que Rad-Man no había sometido al Municipio Autónomo de Caguas (Municipio) la información y la documentación requerida por el Municipio, relativo a la cesión e inscripción de las calles y áreas comunes del proyecto Bosques de la Sierra. Por ello, afirmó que Rad-Man había incumplido con el Art. 3.005 de la Ley Núm. 107-2020, según enmendada, intitulada *Código Municipal de Puerto Rico*, 21 LPRA sec. 7415[1] (Código Municipal).

El 1 de abril de 2025, la Asociación presentó un escrito en cumplimiento de una orden emitida por el DACo, al cual adjuntó la prueba documental requerida para sostener su reclamación[2]. El 4 de abril de 2025, DACo notificó la querella a Rad-Man[3].

Posteriormente, el 1 de mayo de 2025, Rad-Man presentó su contestación y negó ser el desarrollador o urbanizador de Bosques de la Sierra. Sostuvo que adquirió únicamente **el remanente sin desarrollar de la Finca Núm. 60237**, como tercero de buena fe, tras una fusión con MR PR Land, LLC, por lo que no le aplicaban las disposiciones del Art. 3.005 del Código Municipal, 21 LPRA sec. 7415. Alegó también que, aunque había mostrado disposición para colaborar con la segregación y el traspaso de las calles, no tenía obligación de gestionar la legalización del control de acceso[4].

Más adelante, allá para el 17 de junio de 2025, Rad-Man presentó una moción de desestimación, en la que planteó que la cualidad de "urbanizador" exige una participación activa en la promoción, diseño, venta o construcción del proyecto, criterios con los que, según sostuvo, no cumplía. Además, detalló la cadena de titularidad y explicó que MR PR Land, LLC, adquirió el remanente sin desarrollar de la Finca 60237 como parte de la liquidación de Doral Bank por la FDIC, y que dicha entidad, al igual que Rad-Man, nunca asumió las responsabilidades del desarrollador

---

[1] Entrada 1 de SUMAC TA, apéndice 1.

[2] *Íd.*, apéndice 3.

[3] *Íd.,* apéndice 4.

[4] *Íd.,* apéndice 7.

original, ni había promovido, vendido o construido viviendas en Bosques de la Sierra.

Adicionalmente, señaló que las obligaciones relativas a las áreas comunes y al control de acceso corresponden al desarrollador original o a la Asociación, no a Rad-Man. En apoyo de sus alegaciones, adjuntó a la moción copia de la Escritura de Compraventa Núm. 768[5], otorgada el 19 de noviembre de 2015, ante la abogada-notaria Georgette M. Rodríguez Figueroa, así como la declaración jurada de Roberto A. Danial, en su capacidad de gerente de Rad-Man, otorgada el 17 de julio de 2025, ante el abogado-notario Javier A. Feliciano Guzmán[6].

Ese mismo 17 de junio de 2025, la Asociación presentó la oposición a la moción de desestimación y argumentó que Rad-Man era titular de las instalaciones vecinales, las áreas comunes y el terreno destinado al control de acceso, según constaba en las notificaciones del Registrador de la Propiedad Inmueble, quien se negó a inscribir la Escritura de Compraventa 768, por falta de segregación de las áreas comunes[7]. Alegó, además, que Rad-Man había actuado como urbanizador al presentar ante la Oficina de Gerencia de Permisos (OGPe) una solicitud para segregar dichas áreas, identificándose como propietario. Sostuvo que este acto lo hacía responsable de las obligaciones del urbanizador, incluida la legalización del control de acceso[8].

El 30 de julio de 2025, la Asociación presentó una moción suplementaria a su oposición a la moción de desestimación y sometió copia de cierta documentación en poder de las agencias administrativas. Indicó que esa documentación demostraba que Rad-Man continuaba gestionando permisos para segregar e inscribir las calles y áreas comunes de la urbanización Bosques de la Sierra, lo cual confirmaba que continuaba

---

[5] Entrada 1 de SUMAC TA, apéndice 8, anejo 1.

[6] *Íd.,* apéndice 8, anejo 2.

[7] *Íd.,* apéndice 10, anejo 1.

[8] *Íd.,* apéndice 10, anejo 3.

actuando como urbanizador y titular de dichas áreas. Los documentos incluidos fueron: (1) notificación de subsanación dirigida a Rad-Man, como ponente y propietario; (2) carta de autorización de segregación emitida por Rad-Man; (3) inspecciones y endosos del Municipio, que recomendaban proceder con la cesión formal; (4) planos de inscripción parcial; y, (5) certificación del CRIM a favor del proyecto.

El 18 de septiembre de 2025, el DACo emitió la *Resolución Sumaria* objeto de este recurso, en la que declaró con lugar la moción de desestimación presentada por Rad-Man, y ordenó el cierre y archivo de la querella[9]. El DACo concluyó que Rad-Man no es ni ha sido desarrollador o urbanizador del proyecto, y que la Asociación no presentó evidencia alguna que demostrara actos propios de un urbanizador atribuibles a Rad-Man. Concluyó, además, que la Asociación no había cumplido con la carga de probar su reclamación por preponderancia de la prueba, por lo que procedía la desestimación de la querella[10].

Al respecto, el 30 de septiembre de 2025, la Asociación presentó una moción de reconsideración, en la cual alegó que el DACo había errado al resolver sumariamente el asunto, pues consideraba que la evidencia tramitada ante la OGPe demostraba que Rad-Man gestionaba la segregación e inscripción de las calles y áreas comunes, lo que contradecía su alegación de no ser urbanizador. Argumentó que esta documentación creaba una controversia sustancial de hechos, que exigía la celebración de una vista adjudicativa, que garantizara su derecho a un debido proceso de ley.

El 7 de octubre de 2025, notificada por correo regular el 10 de octubre del mismo año, el DACo declaró sin lugar la moción de reconsideración.

Inconforme, el 23 de octubre de 2025, la Asociación instó este recurso y señaló la comisión de los siguientes errores:

---

[9] Entrada 1 de SUMAC TA, apéndice 2.

[10] *Íd.*

A.  Erró el DACo al dictar Resolución Sumaria a pesar de la existencia de controversias sustanciales de hechos sobre el rol de Rad-Man Land 1, LLC como urbanizador del proyecto Bosques de la Sierra.

B.  Erró el DACo al fundamentar su decisión en meras alegaciones del abogado, al adoptar como hecho la carta del Lcdo. Javier Feliciano Guzmán, carente de valor probatorio y sin sustento en evidencia admisible.

C.  Erró el DACo al concluir que Rad-Man Land 1, LLC solo adquirió un "remanente" sin obligaciones de urbanizador, ignorando la evidencia documental que demuestra que dicha entidad tramita activamente permisos de segregación e inscripción de calles y áreas comunes ante la OGPe, incluyendo la notificación de subsanación de la OGPe, la carta del Municipio de Caguas, los planos de inscripción parcial y la certificación del CRIM que acreditan la titularidad y gestión de Rad-Man sobre las áreas comunes.

D.  Erró el DACo al interpretar erróneamente la Ley Núm. 130-1967 y limitar indebidamente su jurisdicción, al excluir del ámbito de aplicación a quien, como Rad-Man, actúa de hecho como urbanizador mediante sucesión o adquisición de las áreas comunes de un proyecto residencial conforme al artículo 8.001(259) del Código Municipal.

E.  Erró el DACo al violar el derecho al debido proceso de ley, al resolver sumariamente la querella sin permitir la presentación de prueba oral y documental ni garantizar una vista adjudicativa conforme a la Ley de Procedimiento Administrativo Uniforme.

El 26 de noviembre de 2025, Rad-Man presentó su oposición al recurso de revisión.

Perfeccionado el recurso, resolvemos.

II

A

La norma doctrinal reiterada es que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt v. AFI y otro,* 206 DPR 803, 919 (2021). Además, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este

Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y, (3) si las conclusiones de derecho fueron correctas. *Asoc. FCIAS. v. Caribe Specialty II*, 179 DPR 923, 940 (2010).

Así pues, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.,* 167 DPR 684, 693 (2006). Por ello, la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

Cónsono con lo anterior, con el propósito de "convencer al tribunal de que la evidencia en la cual se fundamentó la agencia para formular una determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración*". Misión Ind. P.R. v. J.P.*, 146 DPR 64, 131 (1998).

No obstante, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1003 (2011); *Asoc. Fcias. V. Caribe Specialty et al. II*, 179 DPR 923, 941 (2010). Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo de Puerto Rico, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR, a la pág. 819, que cita a *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

B

Tanto nuestra Constitución como la Constitución federal reconocen el derecho fundamental al debido proceso de ley. Const. EE.UU., Enmiendas V y XIV, 1 LPRA; Const. ELA Art. II, Sec. 7, 1 LPRA. Según lo ha establecido nuestra jurisprudencia, el debido proceso de ley salvaguarda el derecho de toda persona a un procedimiento justo, provisto de las garantías que reconoce la ley, tanto en el ámbito judicial como en el administrativo". *Com. Elect. PPD v. CEE et al.,* 205 DPR 724, 743 (2020).

De otra parte, el debido proceso de ley tiene dos vertientes: la sustantiva y la procesal. *Rafael Rosario & Assoc. v. Depto. Familia*, 157 DPR 306, 329 (2002). En su vertiente procesal, este principio impone al Estado la obligación de garantizar que la intervención con los intereses de libertad o propiedad del individuo se realice mediante un procedimiento que sea justo y equitativo. *Com. Elect. PPD v. CEE et al*., 205 DPR, a la pág. 743.

En el contexto de procedimientos adversativos, la jurisprudencia ha establecido que, para que se configure un debido proceso de ley, se deben cumplir los siguientes requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a

contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado; y, (6) que la decisión se base en el récord. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 889 (1993).

En cuanto al alcance del debido proceso de ley en la esfera administrativa, el Tribunal Supremo ha reiterado que este no posee la misma rigidez que en los procedimientos adjudicativos ante los tribunales*. Román Ortiz v. OGPe,* 203 DPR 947, 954 (2020). Ello responde a la necesidad de las agencias administrativas de tramitar sus asuntos con agilidad y a la pericia especializada que se presume tienen para atender y resolver los asuntos delegados por la ley. *Íd.*

Conforme a lo anterior, es menester puntualizar que la Sección 3.1 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada (LPAUG), establece que, en todo procedimiento adjudicativo formal ante una agencia, se salvaguardarán los siguientes derechos:

> (A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
>
> (B) Derecho a presentar evidencia.
>
> (C) Derecho a una adjudicación imparcial.
>
> (D) Derecho a que la decisión sea basada en el expediente.
>
> .     .     .     .     .     .     .     .

3 LPRA sec. 9641.

C

El Reglamento del DACo Núm. 8034 (Reglamento 8034) del 14 de junio de 2011, intitulado *Reglamento de Procedimientos Adjudicativos*, establece las reglas que habrán de gobernar los procedimientos adjudicativos ante dicha agencia. En su Regla 10, provee para que el DACo, a iniciativa propia o a solicitud de parte, ordene al querellante mostrar causa por la cual no deba desestimarse la querella. Ello, si la querella no presenta una reclamación que justifique la concesión de un remedio. En lo pertinente al caso del título, la Regla 11 dispone:

> El Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho **sin la celebración de vista administrativa**, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

(Énfasis nuestro).

D

El marco normativo aplicable a la figura del urbanizador en Puerto Rico se encuentra en la Ley Núm. 130 de 13 de junio de 1967, intitulada *Ley de la Oficina del Oficial de Construcción adscrita al Departamento de Asuntos del Consumidor*, 17 LPRA sec. 501, *et seq.* (Ley Núm. 130), así como en diversas disposiciones del Código Municipal de Puerto Rico. Ambos cuerpos legales delinean las funciones, responsabilidades y obligaciones de quienes se dedican a la construcción y desarrollo de proyectos de vivienda, así como la jurisdicción del DACo sobre sus actuaciones.

La Ley Núm. 130 fue promulgada con el propósito de canalizar la radicación, investigación y adjudicación de querellas relacionadas con defectos de construcción y prácticas indebidas en el mercado de la vivienda. Conforme a su Art. 11, el DACo está facultado para recibir y adjudicar reclamaciones de compradores o aspirantes a comprar viviendas, que aleguen prácticas indeseables o violaciones legales por parte de urbanizadores o constructores. 17 LPRA sec. 511.

El aludido estatuto define en su Art. 2(d) a un urbanizador o constructor como:

> […] toda persona que se dedique al negocio de la construcción en calidad de empresario o principal **responsable de la promoción, diseño, venta, construcción de obras de urbanización para vivienda, o de la construcción en grande escala de viviendas, bien del tipo individual o multipisos**. El término no incluye al corredor de bienes raíces, por lo cual éste no será responsable por los defectos de construcción de las viviendas construidas y cubiertas por esta Ley.

> Incluye a quien asuma la responsabilidad total para la presentación ante la Junta de Planificación de consultas de ubicación y uso de terrenos, y ante la Administración de Reglamentos y Permisos del desarrollo preliminar, planos

preliminares y finales para la construcción de las obras en un predio extenso de terreno que habrá de lotificarse para la construcción de viviendas (unifamiliares o multifamiliares), o que comisione a otros para realizar cualesquiera de tales actividades.

Además incluye a quien desarrolle parcelas o lotes de terreno en número mayor que el permitido como lotificación simple según las leyes y reglamentos de la Junta de Planificación o la Administración de Reglamentos y Permisos, o a quien construya casas o apartamientos para la venta, arrendamiento, u otro uso, en número mayor de veinte (20) como un solo proyecto.

.     .     .     .     .     .     .     .     .

17 LPRA sec. 502. (Énfasis nuestro).

Por su parte, el Art. 8.001(263) del Código Municipal aporta una definición adicional del término urbanizador afín con la Ley Núm.130, pero con elementos propios. Conforme a este cuerpo legal, urbanizador es:

[…] toda persona, natural o jurídica, **con la debida licencia de urbanizador, emitida por el Departamento de Asuntos del Consumidor, que se dedique al negocio de la construcción en calidad de empresario o principal responsable de la promoción, diseño, venta, construcción de obras de urbanización y proyectos de vivienda, bien del tipo individual o multipisos.** Para propósitos de esta definición, el término urbanizador incluirá, además, aquellas instituciones financieras o cualquier persona natural o jurídica que, en virtud de un proceso judicial, extrajudicial o por acuerdo de dación en pago o transacción similar, se convierta en el sucesor en interés de un urbanizador.

21 LPRA sec. 8351. (Énfasis nuestro).

El Código Municipal también impone obligaciones específicas a urbanizadores en materia de anuncios, ventas y promoción de proyectos con acceso controlado. A esos efectos, el Art. 3.005 dispone que todo urbanizador o desarrollador de terrenos o constructor de urbanización, que ofrezca o anuncie la venta de viviendas, solares, lotes o terrenos con acceso controlado, deberá "mostrar el original certificado del correspondiente permiso, según expedido por el municipio, al momento de acordar o firmar cualquier compromiso u opción de compraventa". 21 LPRA sec. 7415. Además, el referido artículo dispone que:

Si a la fecha de firmarse dicha opción, la solicitud de permiso de control de acceso todavía se encuentra pendiente en el municipio correspondiente, el urbanizador o desarrollador vendrá obligado a informar al potencial comprador la etapa en que se encuentra dicha solicitud. El urbanizador o

> desarrollador deberá entregar a todo adquirente copia certificada del permiso de control de acceso otorgado por el municipio en el momento que se otorgue la escritura de compraventa.
>
> .        .        .        .        .        .        .        .

21 LPRA sec. 7415.

III

Según expuesto, la Asociación sostiene que el DACo erró al desestimar la querella mediante su resolución sumaria. Dado que los señalamientos de error se encuentran intrínsecamente vinculados, procederemos a examinarlos de manera conjunta. Veamos.

En primer lugar, la Regla 11 del Reglamento 8034 establece que el DACo solo podrá dictar resolución sumaria, luego de que las partes hayan expuesto sus planteamientos y, evaluada la prueba, no surja controversia real sobre los hechos. La Asociación insiste en que existen controversias sustanciales de hechos, que impedían la resolución sumaria.

No obstante, examinada la documentación sometida por las partes, esta no refleja participación alguna de Rad-Man en el proceso de urbanización, tales como la promoción, planificación, construcción, desarrollo o venta de lotes o viviendas. Todas las actuaciones señaladas - principalmente la presentación de documentos ante la OGPe vinculados a solicitudes de segregación - reflejan únicamente gestiones administrativas de un titular interesado en aclarar la situación registral de su finca, pero no evidencian actividad propia del urbanizador original, ni la asunción de deberes inherentes a dicho rol. El hecho de que Rad-Man figure como "propietario" o "ponente" en trámites iniciados por las agencias no transforma su condición jurídica ni crea, por sí, obligaciones urbanísticas, que la ley impone únicamente al desarrollador del proyecto.

En segundo término, la Asociación argumenta que el DACo fundamentó su decisión en "meras alegaciones de abogado". No obstante, el expediente revela lo contrario.

El DACo examinó la escritura pública certificada mediante la declaración jurada suscrita por el señor Robert A. Danial, en representación

de Rad-Man, así como el tracto registral correspondiente. Dicha evidencia documental, presentada en cumplimiento con las normas probatorias administrativas, ciertamente posee valor persuasivo y acreditativo para propósitos de una adjudicación sumaria.

En sentido contrario, la Asociación no presentó prueba admisible que contraviniera el tracto de titularidad o que demostrara actos afirmativos de urbanización atribuibles a Rad-Man. La alegación de que la carta del notario carece de valor probatorio obvia que este tipo de instrumento forma parte de los documentos públicos cuya autenticidad se presume, y cuya impugnación exige evidencia concreta, la cual no fue presentada.

En tercer lugar, la Asociación sostiene que el DACo erró al concluir que Rad-Man adquirió solo un "remanente", sin obligaciones urbanísticas. Sin embargo, tanto la escritura como la cadena de titularidad evidencian que Rad-Man y su predecesor, MR PR Land, LLC, adquirieron únicamente un sobrante no desarrollado en un proceso de liquidación bancaria. Ninguno de estos adquirentes promovió, gestionó o ejecutó obras de urbanización; tampoco surge evidencia alguna de que Rad-Man o MR PR Land hayan sustituido voluntariamente al urbanizador original, ni que las agencias correspondientes los hayan reconocido como tal. Los documentos sometidos por la Asociación, incluidas las notificaciones de subsanación o recomendaciones municipales, no contradicen este hecho fundamental: Rad-Man es el titular registral de un remanente, y no el sucesor jurídico del urbanizador.

En relación con la supuesta interpretación errónea del DACo de la Ley Núm. 130 y del Código Municipal, la Asociación no identifica disposición legal alguna que imponga deberes de urbanización a quienes únicamente adquieren áreas comunes o restos de fincas previamente urbanizadas. La alegación de que Rad-Man debe considerarse urbanizador "por actuación" carece de sustento legal; ni la Ley Núm.130, ni el Código Municipal, ni la jurisprudencia pertinente extienden automáticamente dicha cualidad a terceros adquirentes que no continúan ni asumen el proyecto de

desarrollo residencial. La interpretación del DACo se encuentra, por ello, dentro del marco razonable que las agencias poseen para evaluar el alcance de su propia jurisdicción.

Finalmente, el planteamiento de violación al debido proceso tampoco prospera. El expediente demuestra que la agencia notificó adecuadamente todas sus determinaciones, permitió la presentación de prueba documental por ambas partes y evaluó los escritos sometidos. La resolución sumaria resultaba procedente, pues la Asociación no presentó evidencia suficiente, que generara una controversia sustancial de hechos. En el ámbito administrativo, el debido proceso permite la adjudicación sumaria cuando la parte promovente no cumple con su carga mínima de producción de evidencia, sin que ello implique la privación del derecho a una vista adjudicativa o una violación al derecho a un debido proceso de ley.

En síntesis, la revisión del expediente revela que la Asociación no demostró la existencia de hechos controvertidos, que impidieran la adjudicación sumaria, como tampoco evidenció actos propios de un urbanizador atribuibles a Rad-Man. Por tanto, el DACo actuó dentro de su facultad, aplicó correctamente el estándar de prueba aplicable y no incurrió en los errores imputados.

IV

Evaluado el recurso y la oposición al mismo, y por los fundamentos antes expuestos, **confirmamos** la *Resolución Sumaria* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones